**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK BINGHAMTON DIVISION**

**CAMPUS BIBLE FELLOWSHIP AT SUNY BROOME COMMUNITY COLLEGE**; **JACOB SEACHRIST**, in his official capacity as President of Campus Bible Fellowship at SUNY Broome Community College,

*Plaintiffs*,

v.

**SUNY BROOME COMMUNITY COLLEGE**; **THE BOARD OF TRUSTEES OF SUNY BROOME COMMUNITY COLLEGE**; **TONY D. HAWKINS**, President of SUNY Broome Community College, in his official and personal capacities; **CAROL ROSS-SCOTT**, Vice President for Student Development and Chief Diversity Officer, in her official and personal capacities; **SCOTT KANE**, Dean of Students, Title IX, in his official and personal capacities; **NICK KOCIENEWSKI**, Director of Student Activities, in his official and personal capacities,

*Defendants*.

No. 3:26-cv-1678 (MAD/MJK)

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Campus Bible Fellowship at SUNY Broome Community College (“CBF”) is a student club comprising students who share a mutual faith in Jesus Christ as their Lord and Savior. Its identity is distinctly Christian, as is its purpose to share and defend the Christian faith.

2. Because of its Christian-centered purpose and mission, CBF requires its student leaders—charged with "promoting, guiding, and leading the spiritual health of the Organization and its members"—to be Christians. Doing otherwise would dilute the ministry's Christian character and stifle its mission of spreading the Christian faith.

3. SUNY Broome Community College ("SUNY Broome") claims that CBF is violating the college's anti-discrimination policies by CBF limiting its leadership positions to members who "profess a personal relationship with Jesus Christ." Accordingly, SUNY Broome refuses to officially recognize CBF as a student club, preventing it from reserving campus space and accessing financial resources.

4. CBF's establishment of leadership standards, however, is an expression of faith at the core of the First Amendment's protections. The First Amendment's Religion Clauses ensure that religious organizations are free to select their leaders without government interference. Implicit in the First Amendment's free exercise, speech, and assembly guarantees is the right to associate with others in the pursuit of religious ends. And at the core of the First Amendment's Free Speech Clause is the mandate that the government never discriminate based on a speaker's viewpoint.

5. SUNY Broome violated each of these bedrock protections when it denied CBF official student club recognition. It put CBF to a coercive and unconstitutional choice—CBF could accept SUNY Broome's leadership standards and abandon its Christian character, or CBF could retain its standards and lose its place in the campus community. And while other student clubs at SUNY Broome limit their leadership positions and/or membership rights to select students, SUNY Broome granted them official recognition without the coercive conditions placed on CBF.

6. This refusal to grant CBF official recognition violates CBF's rights under the First and Fourteenth Amendments to the U.S. Constitution.

7. CBF thus seeks damages and injunctive and declaratory relief to vindicate and safeguard these fundamental rights.

**THE PLAINTIFFS**

8. CBF is an unincorporated expressive association made up of SUNY Broome students. It brings this action on behalf of itself and its individual members.

9. CBF is a campus ministry that exists to promote understanding of the historical Christian faith through Bible study, prayer, discussion, counseling, and fellowship; to make Christianity evident by application of it to personal and true community living; and to examine relationships of modern thought in light of Scripture.

10. CBF is a student chapter of a national organization, Campus Bible Fellowship ("CBF National"), which is the university ministry of Baptist Mid-Missions Global Ministries, Inc. ("Baptist Mid Missions").

11. Baptist Mid-Missions is a missionary-sending agency that "exists to strategically advance the building of Christ's church, with His passion and for His glory, in vital partnership with Baptist churches worldwide."[1]

12. Baptist Mid-Missions is a nonprofit corporation with its principal offices in Middleburg Heights, Ohio.

13. CBF is guided by a trained CBF National chaplain, who advises students, helps them lead Bible studies, and assists with events.

14. CBF's primary purpose is to share the gospel of Jesus Christ as set forth in the Holy Bible through all activities of the chapter.

---

[1] Baptist Mid-Mission, https://www.bmm.org/ (last visited Aug. 26, 2026).

15. As part of its Christian mission, CBF welcomes all students to participate in its general membership, activities, and events—including students regardless of their religious belief, status, affiliation, or any other characteristic.

16. CBF seeks official recognition as a student club at SUNY Broome.

17. CBF seeks to avail itself of the meeting space, speech forums, and other benefits and privileges that are available to recognized student clubs at SUNY Broome.

18. Defendants, under policies they have created and enforced, have denied official student club recognition to CBF.

19. Jacob Seachrist is a student at SUNY Broome and the President of CBF.

20. CBF elects new officers each year, and it elected Mr. Seachrist as President in April 2026.

21. As President, Mr. Seachrist is a spiritual leader of CBF. His duties include facilitating regular Bible studies, spiritually leading the other students in the group, teaching the organization's doctrine, presiding over regular meetings, planning meetings, appointing special committees, registering CBF, and all other duties required by the Student Activities Office.

22. Mr. Seachrist brings this suit in his official capacity as President of CBF.

**THE DEFENDANTS**

23. Defendant SUNY Broome Community College is a community college in the SUNY system. It is governed by the Board of Trustees of SUNY Broome Community College and sponsored by Broome County, New York.

24. Defendant Board of Trustees of SUNY Broome Community College is a ten-member local board of trustees that governs and administers SUNY Broome Community College.

25. Defendant Tony Hawkins is the President of SUNY Broome.

26. In this capacity, Defendant Hawkins oversees SUNY Broome's various academic and student affairs offices, including the Student Development and Diversity Office.

27. Defendant Carol Ross-Scott is the Vice President for Student Development and Chief Diversity Officer for SUNY Broome.

28. In this capacity, Defendant Ross-Scott oversees the SUNY Broome Campus Life Office, which comprises several offices or subdivisions, including the Student Activities Office.

29. Defendants Hawkins and Ross-Scott have the authority to review, approve, or reject their subordinates' decisions, including the decision to deny CBF official recognition as a student club.

30. Defendants Hawkins and Ross-Scott are responsible for the approval, rejection, amendment, repeal, and enforcement of the policies and practices of SUNY Broome, including the policies that are challenged in this lawsuit, which govern the recognition of student clubs.

31. Defendants Hawkins and Ross-Scott knew, or should have known, that the policies challenged in this lawsuit are discriminatory based on religion and viewpoint and were enforced against Plaintiff. Although Defendants knew, or should have known this, they have failed to amend or repeal the policies, interpret the policies in a constitutional manner, or take any other corrective action.

32. Defendant Scott Kane is the Dean of Students, Title IX for SUNY Broome.

33. In this capacity, Defendant Kane leads the Campus Life Office and oversees the Student Activities Office.

34. Defendant Nick Kocienewski is the Director of Student Activities for SUNY Broome.

35. In this capacity, Defendant Kocienewski leads the Student Activities Office.

36. Defendants Kane and Kocienewski are responsible for the approval, rejection, amendment, repeal, and enforcement of the policies and practices of SUNY Broome, including the policies that are challenged in this lawsuit, which govern the recognition of student clubs.

37. Defendants Kane and Kocienewski, in consultation with each other, knowingly enforced SUNY Broome's policies against CBF and engaged in religious and viewpoint discrimination against CBF by denying it official recognition as a student club and related benefits.

## JURISDICTION AND VENUE

38. This civil rights action raises federal questions under the First and Fourteenth Amendments of United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

39. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

40. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

41. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district or all of the acts described in this Complaint occurred in this district.

42. Divisional venue is proper in the Binghamton Division because the acts described in this complaint occurred, at least in part, in Broome County, New York.

## FACTUAL BACKGROUND

### I. SUNY Broome operates a forum for recognized student clubs.

43. SUNY Broome operates a forum of student groups that includes over 50 recognized student clubs.[2]

44. The forum's purpose is to provide students with the opportunity to bond around shared interests and beliefs, feel at home around like-minded peers, gain leadership opportunities, and discover new skills and passions. Ex. A, SUNY Broome Club Handbook § 2.1.

45. To become a recognized student club, a group of at least five students must submit a club constitution and registration form to the Student Activities Office and present a club proposal at a meeting of the Student Assembly. *Id.* § 2.5.

46. Upon completion of this process, a group becomes a recognized student club if the Student Assembly votes to recognize the club and the Director of Student Activities approves of the group. *Id.* § 2.5.

47. Under the "College Discretion Rule," the Director of Student Activities and the Student Assembly have the discretion to deny recognition if (1) similar groups already exist on campus, (2) the group has an "inappropriate focus," or (3) the group's existence would unduly burden or marginalize other SUNY Broome students. *Id.* § 2.5.

48. All recognized student clubs must abide by SUNY Broome's "Open Access Rule," which states:

---

[2] SUNY Broome, Fall 2026 Clubs & Organizations, https://sunybroome.shmacs.org/clubs (last visited Aug. 26, 2026).

> Clubs may not discriminate against any student for membership or executive board positions in any way. This includes, but is not limited to, discrimination on the basis of race, color, ethnicity, religion, citizenship status, sex, gender, gender identity, gender expression, sexual orientation, veteran status, physical or mental disability or age. Any student that pays the Student Activity fee must be eligible for membership. Any student that pays the Student Activity Fee and has the minimum GPA outlines in this handbook must be eligible for an executive board position.

*Id.* § 2.2.

49. All recognized student clubs must also abide by SUNY Broome's "Non-Discrimination Statement," which states, in relevant part:

> SUNY Broome Community College does not discriminate on the basis of race, sex, color, creed, religion (including religious attire, clothing or facial hair), age, national origin, disability, marital status, sexual orientation, gender identity, transgender status, pregnancy, predisposing genetic characteristics, domestic violence victim status, military status or status as a disabled veteran or veteran of the Vietnam era in the recruitment of students; the recruitment and employment of faculty and staff; or the operation of any of its programs and activities.[3]

50. Once a group becomes a recognized student club, it gains access to several benefits available only in the student club forum.

51. For example, recognized student clubs gain special access to funding; space for meetings and events; access to club fairs to increase organizational exposure and membership; printing resources for club activities and promotion; and means of advertising the organization and its events, including a page dedicated to student clubs on SUNY Broome's website. *See* Ex. A §§ 3.1, 5, 6; SUNY Broome, *supra* n.2.

52. University funding for recognized student clubs comes from a student activity fee. Ex. A § 3.1. Every full-time SUNY Broome student, including CBF members, must pay $215 per semester to cover the fee.

---

[3] SUNY Broome Policies and Procedures, GA2001 Non-Discrimination Statement, https://sunybroome.edu/policies-procedures/ga2001-non-discrimination-statement/ (last visited Aug. 26, 2026).

53. The Student Activities Office then allocates student activity fee funding to recognized student clubs. Each recognized student club may receive up to $500 per year in student activity fee allocation. *Id.* § 3.2.

54. To retain access to these benefits, all recognized student clubs must re-register with the Student Activities Office during the first three weeks of every school year. *Id.* § 2.6.

55. Re-registration requires the student club to submit to the Student Activities Office a club constitution and informational registration forms.

**II. SUNY Broome denies CBF recognition.**

56. CBF first gained official recognition as a student club during the 1996–97 school year.

57. CBF re-registered every year and retained active student club recognition from that time until 2025.

58. During the re-registration period for the 2025–26 school year, CBF's advisor, Thomas Jahn, submitted the club's constitution to the Student Activities Office for re-registration. The constitution Mr. Jahn submitted is attached as Exhibit B.

59. On August 26, 2025, SUNY Broome's Director of Student Activities, Nick Kocienewski, sent an email to Mr. Jahn rejecting CBF's constitution. That email is attached as Exhibit C.

60. According to Dr. Kocienewski, the constitution violated SUNY's Open Access Rule, ostensibly because it required CBF leaders to share the club's Christian faith.

61. Dr. Kocienewski stated, "I am reaching out after reviewing the constitution submitted with the Campus Bible Fellowship re-registration. As written, the constitution conflicts with the policies outlined in the Club Handbook.

Clubs on campus are required to have open access, as stated in Section 2.2 of the Club Handbook."

62. He then identified ten sections in CBF's constitution that did not "meet this requirement." And he instructed CBF to "revise your constitution to comply with the non-discrimination policies so the club can maintain institutional recognition and access to Student Activities resources."

63. Each section he identified required CBF's leaders (its voting members and officers) to adhere to CBF's statement of faith, act as spiritual leaders, and/or maintain a personal relationship with Jesus Christ.

64. Dr. Kocienewski instructed that "requiring agreement with the Statement of Faith as a condition for voting privileges or eligibility for leadership positions is not permitted under the Club Handbook."

65. In August 2025, the Student Activities Office placed CBF on "inactive" status.

66. By being placed on "inactive" status, CBF was no longer treated as a recognized student club, and it lost all benefits that flow from official student club recognition.

67. In April 2026, CBF elected Jacob Seachrist as president of the organization.

68. On June 4, 2026, Mr. Seachrist emailed Dr. Kocienewski a revised CBF constitution.

69. Like the constitution CBF submitted in 2025, the revised 2026 constitution required CBF's voting members and officers to adhere to CBF's statement of faith, act as spiritual leaders, and maintain a personal relationship with Jesus Christ. The revised constitution is attached as Exhibit D.

70. On June 22, 2026, Dr. Kocienewski responded to Mr. Seachrist, again rejecting CBF's Constitution as violative of SUNY's Open Access Rule and Non-Discrimination Statement. That email is attached as Exhibit E.

71. Dr. Kocienewski stated, "I have reviewed the constitution you submitted and consulted with Dr. Scott Kane, Dean of Students, regarding its compliance with SUNY Broome policies. Unfortunately, the constitution, as written, is not in compliance with Section 2.2 of the Club Handbook, and SUNY Broome Policy GA2001."

72. He noted that, "[w]hile student organizations are free to express and promote their religious beliefs and mission, recognized student clubs may not restrict membership or voting privileges based on a student's religious beliefs or require adherence to a statement of faith as a condition of participation. Any student who pays the Student Activity Fee must be eligible for membership and participation in club governance."

73. He then instructed Mr. Seachrist to "[p]lease review the Club Handbook and revise the constitution to bring it into compliance with SUNY Broome policies."

74. CBF remains on "inactive" status with the college, meaning SUNY Broome no longer treats it as an officially recognized student club, and CBF does not have access to any of the benefits available in the recognized student club forum.

## III. SUNY Broome's Student Club Policies force CBF to violate its religious beliefs.

75. CBF seeks to preserve its Christian identity, purpose, and message.

76. CBF's Christian faith compels it to provide a welcoming environment for all students to fellowship and learn more about Jesus Christ. Accordingly, any SUNY Broome student may become a general member of CBF.

77. But as a Christian organization, CBF requires that its leaders share its faith.

78. CBF leadership consists of two categories: voting members and officers.

79. Voting members "function as the first level of spiritual leadership for the group," with a role "similar in scope and responsibility to a board of elders in a church." Ex. D at 2.

80. Voting members' responsibilities as spiritual leaders include "upholding, teaching, and leading all members in the spiritual truths embodied in the Organization's statement of faith and the Bible." *Id.*

81. Unlike general members, voting members steer the direction of the organization by voting on changes to the organization's foundational documents and selecting officers. *See id.*

82. Only voting members are allowed to lead spiritual and religious activities at CBF, including group prayer, Bible studies, and musical worship. *See id.*

83. Because of their role as spiritual leaders, voting members must "subscribe without reservation to [CBF's statement of faith] as [its] understanding of the Scriptures." *Id.*

84. CBF's officers are elected voting members and "are the highest level of spiritual leaders for the Organization," meaning they are responsible for "upholding, teaching, and leading all members in the spiritual truths embodied in the Organization's statement of faith and the Bible." Ex. D at 3.

85. Their responsibilities as spiritual leaders specifically include (1) "promoting, guiding, and leading the spiritual health of the Organization and its members," (2) "leading others toward Christian maturity," (3) "teaching faithfully the Word of God," (4) "teaching, inculcating, defending, communicating, and

advocating the Organization's Christian beliefs, both to its members and to the rest of the campus community," and (5) "ensuring that [CBF] is advancing its Christian mission" as described in its constitution. *Id.*

86. CBF charges each officer with the responsibility of "living, before the Organization and the world, a life which places Jesus Christ at the center, setting the example for others to follow." *Id.* at 3–4.

87. As a result, all CBF officers must, among other things, "profess a personal relationship with Jesus Christ and must also affirm in writing their agreement with and adherence to [CBF's] statement of faith." *Id.* at 3.

88. CBF currently has five voting members, four of whom are also officers.

89. CBF's leadership policies are an expression of its faith and are integral to ensuring that it can achieve its religious mission.

90. It would contradict CBF's religious beliefs and expressive and associational purpose to permit individuals who do not profess a relationship with Jesus Christ or share its religious beliefs to serve as leaders.

91. Conferring leadership positions to those who do not profess a relationship with Jesus Christ and share CBF's religious beliefs would communicate a message that CBF opposes and does not wish to communicate.

92. Because of its sincerely held religious beliefs, CBF objects to the College Discretion Rule, Open Access Rule, and Non-Discrimination Statement (collectively "Student Club Policies") because they require CBF to open its leadership positions to students who do not share the organization's religious beliefs or support its religious purpose and mission.

93. Defendants' Student Club Policies and their enforcement of the Student Club Policies burden Plaintiffs' free exercise, speech, assembly, and expressive association rights.

94. Defendants' Student Club policies and their enforcement of those policies subject CBF to an annual review process in which officials have unbridled discretion to determine its standing on campus and access to campus resources and funding and must consider content- and viewpoint-based factors when deciding whether to grant a club "recognized" status.

95. Defendants' Student Club Policies and their enforcement of the Student Club Policies give CBF less access to campus resources than other student organizations at SUNY Broome.

96. Because of Defendants' actions enforcing their Student Club Policies, CBF was denied access to student club fairs, has no access to student services fee funding, cannot reserve meeting and event space, and has minimal access to administrative support from the Student Activities Office, among other things.

97. CBF holds and advocates for Christian beliefs and viewpoints that it believes are divinely mandated, universally applicable theological and ethical propositions.

98. CBF seeks to maintain fidelity to these beliefs and viewpoints in its public as well as private expressions, including through associating as a group that expresses these beliefs and viewpoints.

99. Defendants' Student Club Policies and their enforcement of the Student Club Policies compel CBF to send a message that conflicts with its Christian beliefs about who can lead its Christian organization.

100. CBF objects to the requirement compelling it to speak a message with which it disagrees as a condition of being granted official student club recognition.

101. Mr. Seachrist has paid the student activity fee to SUNY Broome each semester that he has attended the college.

102. Mr. Seachrist objects to the student activity fees that he has been required to pay pursuant to policies that infringe on his and CBF's constitutional rights.

**IV. Defendants treat other student groups better than CBF.**

103. The purpose of the student club forum is to encourage students to form interest-based organizations around shared ideas.

104. Many student organizations do form around shared ideas.

105. Defendants treat other student clubs more favorably than CBF under their Student Club Policies.

106. In denying CBF active recognition as a student club, Defendants told CBF that "[a]ny student who pays the Student Activity Fee must be eligible for membership and participation in club governance."

107. Yet, upon information and belief, Defendants allow other student clubs to limit membership and leadership positions to those who support the organization's purpose.

108. For example, the constitution of the student club "Love You Like a Sister" provides for a "Right Hand Woman" executive officer position. The Love You Like a Sister constitution is attached as Exhibit F.

109. Love You Like a Sister's constitution notes that "[w]omen think differently, act differently and solve problems differently from most men." It states that the club's purpose is "to support the community and the sisterhood within it." And it requires members to "serve as a sisterhood." Ex. F at 1.

110. On information and belief, Love You Like a Sister is a recognized student club at SUNY Broome.

111. The constitution of "ElevateHer" similarly asserts a mission to "[s]upport and empower women pursuing careers in traditionally male-dominated

fields such as science, technology, engineering, mathematics, construction, business, and skilled trades." The ElevateHer constitution is attached as Exhibit G.

112. On information and belief, ElevateHer is a recognized student club at SUNY Broome.

113. Men of Excellence describes itself as a program "designed to support minority male students academically, socially, personally, and professionally."[4]

114. Men of Excellence also has an oath, which states in part, "[w]e, as men of color, commit to fostering a sense of pride, community, and respect for diversity and inclusion on the campus of SUNY Broome Community College, and beyond."[5]

115. After listing positive character traits expected of members, the oath states, "[t]his is the excellent man I believe in. This is the excellent man I am building. This is the excellent man I will be." *Id.*

116. On information and belief, Men of Excellence is a recognized student club at SUNY Broome.

**STATEMENTS OF LAW**

117. Each and all of the acts alleged in this complaint were done by Defendants, or their agents or persons under their control, under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, or policies of the State of New York.

118. Defendants knew or should have known that they were violating Plaintiffs' constitutional rights by denying CBF official student club recognition because it requires that its leaders, who have religious responsibilities, share the club's religious beliefs and support its purposes.

---

[4] SUNY Broome, *supra* n.2.

[5] SUNY Broome The Swarm, Men of Excellence, https://sunybroome.campuslabs.com/engage/organization/menofexcellence (last visited Aug. 26, 2026).

119. The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in effect.

120. Plaintiffs are suffering irreparable harm from Defendants' Student Club Policies and Defendants' enforcement of those policies.

121. Plaintiffs have no adequate or speedy remedy at law to correct the deprivation of their rights by Defendants.

122. Defendants' actions and policies, as set forth above, do not serve any rational, legitimate, or compelling state interest and are not narrowly tailored to serve any such interests.

123. Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, irreparable harm and are entitled to nominal damages and equitable relief.

124. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their rights under the United States Constitution and to an injunction against Defendants' policies and actions. Additionally, Plaintiffs are entitled to compensatory and nominal damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## FIRST CAUSE OF ACTION
## Violation of the First Amendment to the U.S. Constitution
## Expressive Association and Assembly
## U.S.C. § 1983

125. Plaintiffs repeat each of the allegations in paragraphs 1–124.

126. Implicit in the free exercise, speech, and assembly rights of the First Amendment guarantees is a corresponding right to associate with others in the pursuit of a wide variety of religious, political, social, economic, educational, and cultural ends.

127. The Assembly Clause of the First Amendment also guarantees the right to peaceably assemble.

128. Plaintiffs peaceably assemble and engage in expression and expressive activities as a group.

129. Plaintiffs believe SUNY Broome's on-campus speech is a way to share the Gospel of Jesus Christ with non-Christians and a way to disciple and equip other Christians on campus to grow and mature in their faith.

130. CBF limits leadership positions to members who "subscribe without reservation to [CBF's statement of faith] as [the organization's] understanding of the Scriptures."

131. Defendants' Student Club Policies compel CBF to open its leadership positions to members who do not subscribe to and live out the chapter's beliefs.

132. Compelling Plaintiffs to accept leaders who do not subscribe to and live out CBF's beliefs would force them to associate and assemble with leaders they disagree with and promote a message they disagree with.

133. Compelling Plaintiffs to do so also runs contrary to CBF's expressive purposes for which the chapter was created, including "to share, proclaim, defend, teach, and live out [its] religious beliefs, based on a traditional, dispensational view of the Bible, as summarized in [its] statement of faith."

134. Compelling Plaintiffs to associate and assemble with leaders who do not subscribe to and live out CBF's beliefs would jeopardize the chapter's relationship with CBF National and deprive the chapter of the opportunity to assemble and associate with like-minded Christians.

135. Defendants' Student Club Policies and related practices violate the Expressive Association and Assembly Rights of the First Amendment to the United States Constitution, both facially and as applied.

**SECOND CAUSE OF ACTION**
**Violation of the First Amendment to the U.S. Constitution**
**Religious Autonomy**
**42 U.S.C. § 1983**

136. Plaintiffs repeat each of the allegations in paragraphs 1–124.

137. The Free Exercise and Establishment Clauses of the First Amendment guarantee the right of religious groups to choose their own leaders without government interference.

138. CBF's purpose is to "share, proclaim, defend, teach, and live out [its] religious beliefs, based on a traditional, dispensational view of the Bible, as summarized in [its] statement of faith."

139. In support of this purpose, CBF limits leadership positions to members who "subscribe without reservation to [CBF's statement of faith] as [the organization's] understanding of the Scriptures."

140. CBF's voting members are "the first level of spiritual leadership for the group" with roles "similar in scope and responsibility to a board of elders in a church."

141. CBF's officers "are the highest level of spiritual leaders for the Organization," meaning they are responsible for "upholding, teaching, and leading all members in the spiritual truths embodied in the Organization's statement of faith and the Bible."

142. Their responsibilities as spiritual leaders specifically include (1) "promoting, guiding, and leading the spiritual health of the Organization and its members," (2) "leading others toward Christian maturity," (3) "teaching faithfully the Word of God," (4) "teaching, inculcating, defending, communicating, and advocating the Organization's Christian beliefs, both to its members and to the rest of the campus community," and (5) "ensuring that [CBF] is advancing its Christian mission" as described in its constitution.

143. CBF charges each officer with the responsibility of "living, before the Organization and the world, a life which places Jesus Christ at the center, setting the example for others to follow."

144. As a result, all CBF officers must, among other things, "profess a personal relationship with Jesus Christ and must also affirm in writing their agreement with and adherence to [CBF's] statement of faith."

145. Defendants' denial of official recognition for CBF—including the rights, privileges, and benefits that flow from that recognition—because the chapter limits leadership positions to members who subscribe to and live out the chapter's religious beliefs violates Plaintiffs' First Amendment right to religious autonomy to select its own religious leaders.

146. Defendants' Student Club Policies and related practices violate the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution, both facially and as applied.

**THIRD CAUSE OF ACTION**
**Violation of the First Amendment to the U.S. Constitution**
**Free Speech Clause**
**42 U.S.C. § 1983**

147. Plaintiffs repeat each of the allegations in paragraphs 1–124.

148. In a limited forum, the Free Speech Clause of the First Amendment prohibits the government from discriminating based on viewpoint, or a speaker's motivating ideology, opinion, or perspective.

149. Within that same forum, the Free Speech Clause requires the government to adequately limit the discretion of university officials who grant (or deny) recognition or access to student fee funding through narrow, objective, and definite standards to protect against viewpoint discrimination.

150. SUNY Broome created a limited public forum by recognizing student clubs and providing benefits to those clubs.

151. Defendants' Student Club Policies—specifically the College Discretion Rule—give SUNY Broome officials unbridled discretion to discriminate based on viewpoint.

152. The College Discretion Rule

a. permits college officials to deny a student club recognition if they deem that (1) similar groups already exist on campus, (2) the group has an "inappropriate focus," or (3) the group's existence would unduly burden or marginalize other SUNY Broome students;

b. does not define or contain any comprehensive guidelines, standards, or criteria that limit the discretion of SUNY Broome officials to determine what constitutes a student organization's failure to meet the requirements for registration;

c. does not require college officials to approve or deny an application within a certain time period.

153. Defendants have also engaged in viewpoint discrimination against Plaintiffs by denying their request for student club recognition because of their religious viewpoint.

154. Defendants have applied their Student Club Policies to CBF, thus barring it from limiting leadership positions to members who subscribe to and live out its religious beliefs, which are protected viewpoints.

155. Yet Defendants have created or permitted carve-outs from their Student Club Policies for other student clubs at SUNY Broome that restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

156. Defendants' decision to deny CBF official student club recognition does not serve any rational interest considering the purposes of the forum of recognized student clubs.

157. Applying the Student Club Policies to Plaintiffs would also force them to accept leaders who do not share CBF's faith and allow those leaders to teach the Bible, lead outreach activities, and speak on behalf of CBF on matters of faith to CBF members and the rest of the campus community.

158. Applying the Student Club Policies to Plaintiffs would thus compel Plaintiffs to speak a message they do not agree with or wish to speak.

159. Defendants' Student Club Policies and related practices violate the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

**FOURTH CAUSE OF ACTION**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**42 U.S.C. § 1983**

160. Plaintiffs repeat each of the allegations in paragraphs 1–124.

161. Plaintiffs are motivated by their sincerely held religious beliefs to promote speech on campus on several topics from a Christian worldview.

162. Plaintiffs believe their on-campus speech is a way to share the Gospel of Jesus Christ with non-Christians and to disciple and equip other Christians on campus to grow and mature in their faith.

163. The Free Exercise Clause of the First Amendment guarantees religious believers—at a bare minimum—equal treatment.

164. A public university policy that burdens religious exercise and is not both neutral and generally applicable must satisfy strict scrutiny.

165. Defendants' Student Club Policies and related practices are not neutral or generally applicable because they treat Plaintiffs' religious exercise less favorably than comparable secular activity.

166. Defendants' Student Club Policies and related practices are not neutral or generally applicable because they disqualify Plaintiffs from generally

available benefits that they are otherwise qualified for because of their religious status and exercise.

167. Defendants' Student Club Policies and related practices are not neutral or generally applicable because they grant college officials the discretion to decide which reasons for complying with their policies are worthy of solicitude.

168. CBF limits leadership positions to members who "subscribe without reservation to [CBF's statement of faith] as [the organization's] understanding of the Scriptures."

169. Defendants' Student Club Policies and related practices burden Plaintiffs' religious exercise by putting them to the choice of (1) limiting leadership positions to members who subscribe to and live out CBF's religious beliefs and thus foregoing official student club recognition and the rights, privileges, and benefits that flow from that recognition; or (2) opening leadership positions to any member and thus significantly affecting CBF's religious message and mission.

170. Defendants' Student Club Policies and related practices are neither neutral nor generally applicable.

171. Defendants have established exemptions to their Student Club Policies.

172. Several student clubs at SUNY Broome restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

173. Defendants have granted each of these student clubs official recognition even though they restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

174. Defendants have not consistently applied their Student Club Policies to student clubs that restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

175. Defendants' Student Club Policies grant SUNY Broome officials the discretion to grant or deny official student club recognition. The College Discretion Rule permits college officials to deny a student club recognition if they deem that (1) similar groups already exist on campus, (2) the group has an "inappropriate focus," or (3) the group's existence would unduly burden or marginalize other SUNY Broome students.

176. Defendants' Student Club Policies and related practices violate the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

**FIFTH CAUSE OF ACTION**
**Violation of the Fourteenth Amendment to the U.S. Constitution**
**Equal Protection Clause**
**42 U.S.C. § 1983**

177. Plaintiffs repeat each of the allegations in paragraphs 1–124.

178. The Equal Protection Clause of the Fourteenth Amendment protects against invidious discrimination.

179. CBF is similarly situated to other student clubs at SUNY Broome.

180. CBF limits leadership positions to members who "subscribe without reservation to [CBF's statement of faith] as [the organization's] understanding of the Scriptures."

181. Under Defendants' Student Club Policies and related practices, Defendants have refused to grant CBF official recognition unless CBF agrees not to limit its leadership positions to members who subscribe to the club's religious tenets.

182. Under Defendants' Student Club Policies and related practices, Defendants have treated other student clubs more favorably than CBF.

183. Defendants have established exemptions to their Student Club Policies.

184. Several student clubs at SUNY Broome restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

185. Defendants have granted each of these student clubs official recognition even though they restrict membership or leadership, or both, based on at least one of the categories listed in the Student Club Policies.

186. Because Defendants' disparate treatment of Plaintiffs infringes on Plaintiffs' First Amendment rights, discriminatory intent is presumed.

187. What's more, Defendants have engaged in discriminatory activity by applying the Student Club Policies to Plaintiffs to intentionally discriminate against their rights under the First Amendment.

188. Defendants' Student Club Policies and related practices violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both facially and as applied.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against Defendants and provide them with the following relief:

A. A declaratory judgment that Defendants' Student Club Policies and related practices violate Plaintiffs' rights under the United States Constitution, facially and as-applied as delineated above;

B. A preliminary and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing Defendants' Student Club Policies to deny official student club recognition to CBF because CBF selects leaders who support its mission and purposes and who share and will advocate for its religious beliefs;

C. Compensatory and nominal damages for the violation of Plaintiffs' constitutional rights;

D. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

E. All other further relief to which Plaintiffs may be entitled.

Dated: September 3, 2026

Respectfully submitted,

*s/ Tyson C. Langhofer*
Tyson C. Langhofer
Va. Bar No. 95204
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
tlanghofer@ADFlegal.org

Mercer S. Martin*
Ariz. Bar No. 038138
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
mmartin@ADFlegal.org

*Attorneys for Plaintiff*

* Motion for Limited Admission *Pro Hac Vice* forthcoming