UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAMPUS BIBLE FELLOWSHIP AT SUNY BROOME COMMUNITY COLLEGE; JACOB SEACHRIST, in his official capacity as President of Campus Bible Fellowship at SUNY Broome Community College,

Plaintiffs,

v.

SUNY BROOME COMMUNITY COLLEGE; THE BOARD OF TRUSTEES OF SUNY BROOME COMMUNITY COLLEGE; TONY D. HAWKINS, President of SUNY Broome Community College, in his official and personal capacities; CAROL ROSS-SCOTT, Vice President for Student Development and Chief Diversity Officer, in her official and personal capacities; SCOTT KANE, Dean of Students, Title IX, in his official and personal capacities; NICHOLAS M. KOCIENIEWSKI, Director of Student Activities, in his official and personal capacities,

Defendants.

**DECLARATION OF NICHOLAS M. KOCIENIEWSKI**

Civil Action No. 3:26-cv-1678 (MAD/MJK)

I, Nicholas M. Kocieniewski, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Director of Student Activities at SUNY Broome Community College ("SUNY Broome"). I make this declaration in opposition to Plaintiffs' motion for a preliminary injunction.

2. In my role as Director of Student Activities, I am familiar with the College's student club recognition process, the Club Handbook used by the Office of Student Activities, The Swarm student organization platform, and records maintained in connection with student club applications.

3. Unless otherwise stated, the facts set forth in this declaration are based on my personal knowledge and on records maintained by the Office of Student Activities in the ordinary course of its operations.

**Non-Discrimination in Student Clubs at SUNY Broome**

4. The Office of Student Activities oversees and supports student clubs at SUNY Broome. The policies and procedures applicable to student clubs are contained in the Student Clubs Handbook. A true and correct copy of the 2025-2026 Club Handbook (the "Club Handbook") is attached as **Exhibit A.**[1]

5. Clubs at SUNY Broome are voluntary affiliations, and club membership and participation must be open to any student paying the Student Activity Fee. Clubs may not discriminate against any student for membership or leadership board positions; rather, any student paying the Student Activity Fee and meeting the applicable GPA requirement must be eligible for an executive board position. The Club Handbook specifically states:

> …Clubs may not discriminate against any student for membership or executive board positions in any way. This includes, but is not limited to, discrimination on the basis of race, color, ethnicity, religion, citizenship status, sex, gender, gender identity, gender expression, sexual orientation, veteran status, physical or mental disability or age. Any student that pays the Student Activity fee must be eligible for membership. Any student that pays the Student Activity Fee and has the minimum GPA outlines in this handbook must be eligible for an executive board position.

Ex. A pp. 2-3

---

[1] The 2026-2027 SUNY Broome Club Handbook substantively retained the same open access approach and added an "Open Access Constitutional Requirement" directing clubs to include SUNY Broome's nondiscrimination language in their constitutions. The 2026-2027 Club Handbook also states that a submitted club constitution that does not comply with the handbook will be denied recognition. A true and correct copy of the 2026-2027 Club Handbook is attached as **Exhibit B.**

6. The Club Handbook requires that all clubs "[a]dhere to Non-Discrimination policy outlined in club registration, as well as [the] student code of conduct." Ex. A p. 5.

7. This is consistent with SUNY Broome's Nondiscrimination Policy, which provides, in relevant part:

> In all of its activity, the College adheres to its non-discrimination commitment.
>
> SUNY Broome Community College does not discriminate on the basis of...religion (including religious attire, clothing or facial hair)...[in the] operation of any of its programs and activities...

A copy of this Nondiscrimination Policy is attached as **Exhibit C**.

**Recognized Sponsored and Unsponsored Student Clubs**

8. Activity Fees for student clubs come from the Student Activity fee that is charged to SUNY Broome students. Clubs are expected to spend any portion of this fee that is awarded to them during the same academic year (i.e., between the first week of classes in the fall semester to the last day of classes in the Spring semester); any expenditures during the summer months must be pre-approved. At the end of the Spring semester, any unspent money is transferred from the club's financial account back to the general Student Activities fund.

9. The Club Handbook distinguishes between sponsored and unsponsored clubs. Sponsored clubs are allocated $500 from Student Activity fee revenue per academic year and may apply to the Student Government Association ("SGA") for additional funds throughout the academic year.[2] In addition, recognized sponsored clubs have the ability to hold meetings and events, use and raise money, recruit new members, reserve space, publish materials, post flyers on campus bulletin boards, access printing and certain equipment, and participate in student activities fairs.

[2] Clubs that are registered after the fall semester begins may be allocated a reduced amount that corresponds with their shorter term of operation.

10. Like sponsored clubs, recognized unsponsored clubs may meet, hold events on campus, recruit, and use The Swarm, but they do not receive a $500 allocation from the Student Activities fee and may not request additional student activity funding. Unsponsored clubs may restrict membership based on academic major, GPA, or affiliation with an outside organization. Like sponsored clubs, unsponsored clubs cannot restrict membership based on a protected characteristic, such as religion.

11. Both recognized sponsored and unsponsored clubs may raise Earned Income money through fundraising efforts. Earned Income money may stay in the club's financial account from year to year.

12. Recognized student clubs are required to re-apply for recognition each academic year. As with the original application process, I review each constitution that is submitted in connection with a club's re-application to ensure that the constitution complies with the Club Handbook's Open Access policy and SUNY Broome's Non-Discrimination policy.

**Christian Bible Fellowship Re-Registration for the 2025-2026 Academic Year**

13. Christian Bible Fellowship (CBF) previously was recognized as a student club at SUNY Broome.

14. In connection with its re-registration for the 2025-2026 academic year, CBF was required to submit its constitution for my review. On August 25, 2025, CBF submitted the constitution that is attached as **Exhibit D**.

15. While the CBF constitution contained a nondiscrimination statement, it "retain[ed] the right to limit leadership and voting membership positions to students who share its religious beliefs, as detailed in Article II §§ 2-3 and Article IV." Ex. D, p. 2.

16. The submitted constitution distinguished between general and voting membership. While any SUNY Broome student could become a general member, voting membership was open only to "all SUNY Broome undergraduate students who affirm in writing their agreement with and adherence to [CBF's] purpose and statement of faith as outlined in Article X. All voting members shall subscribe without reservation to Article X as our understanding of the Scriptures..." Ex. D, p. 2.

17. The constitution also provided that "[v]oting members who express their renunciation of any portion of the purpose or Statement of Faith in Article X by word or deed may be dropped from the voting membership..." and provided they receive a recommendation of the Executive Board and 2/3 vote of the voting membership, students could be reinstated "to the voting membership...if the individual is willing to re-affirm in writing their agreement with and adherence to Purpose of the Organization and the statement of faith found in Article X." Ex. D, p. 3.

18. In addition to being students enrolled at SUNY Broome, having served as active voting members for two semesters and being in good standing with CBF and SUNY Broome, the constitution contained the following eligibility requirements for its Executive Board:

> ...Officers must profess a personal relationship with Jesus Christ and must also affirm in writing their agreement with and adherence to the statement of faith. Only those persons who affirm in writing their agreement with and adherence without reservation to the CBF statement of faith (*i.e.,* Article X) as our understanding of the Scriptures are eligible for leadership positions...

Ex. D, p. 3.

19. The 2025-2026 academic year was the first year that I required student organizations to submit their constitutions as part of the re-registration process. As a result, prior

to August 25, 2025, I was unaware that CBF had previously submitted the same noncompliant constitution in 2020, before I began my employment with SUNY Broome.

20. On August 26, 2025, I contacted Thomas Jahn, who I understood to be the then-Advisor of the club, and notified him that the CBF constitution that was submitted in connection with the organization's re-registration conflicted with the Open Access policy in the Club Handbook because it conditioned voting privileges and eligibility of leadership positions on students' agreement with CBF's statement of faith. I advised Mr. Jahn that the purpose of the club as stated (an Evangelical Christian student organization) was "fully acceptable," and the club's statement of faith was not under review. I asked that Mr. Jahn revise the constitution to comply with the Club Handbook and SUNY Broome's non-discrimination policy "so the club can maintain institutional recognition and access to Student Activities resources." A copy of my August 26, 2025, email is attached as **Exhibit E**.

21. These requirements could not be included in the constitution because they violate the Club Handbook's Open Access policy and SUNY Broome's non-discrimination policy by requiring that voting members and leaders of the organization adhere to particular religious beliefs. Permitting CBF to restrict membership and leadership positions based on religion directly contradicts the Club Handbook's Open Access provision's requirements that "[a]ny student that pays the Student Activity fee must be eligible for membership," and "[a]ny student that pays the Student Activity Fee and has the minimum GPA outlines in this handbook must be eligible for an executive board position." Ex. A p. 3.

22. On September 5, 2025, I received a response from Mr. Jahn indicating that CBF was reviewing the information I had provided and was in the process of revising its constitution. A copy of Mr. Jahn's September 5, 2025, email is attached as **Exhibit F**.

**Campus Bible Fellowship's Request for Recognition for the 2026-2027 Academic Year**

23. On April 30, 2026, I received an email from SUNY Broome student Jacob Seachrist, the new president of CBF at SUNY Broome. Mr. Seachrist stated that he was attempting to register CBF as a club but was not able to complete the organizational profile on The Swarm. A copy of the April 30, 2026 email chain is attached as **Exhibit. G.**

24. I responded to Mr. Seachrist on May 6, 2026, and informed him that CBF was in "inactive status," and that I would work with him pursuant to the Club Handbook to return the club to active status. I asked Mr. Seachrist to send me the constitution CBF wanted to use. A copy of this email is attached as Ex. G, p. 1.

25. I received the constitution on June 1, 2026. A copy of the constitution, with a last revised date of April 21, 2026, that Mr. Seachrist provided is attached as **Exhibit H.** Like the version of the constitution that Mr. Jahn sent to me in connection with the club's re-registration in 2026, the constitution that Mr. Seachrist provided contained limitations on voting membership and executive leadership eligibility on the basis of adherence to CBF's statement of faith.

26. On June 22, 2026, I informed Mr. Seachrist that the constitution he provided did not comply with the Open Access policy in the Club Handbook or SUNY Broome's non-discrimination policy. Specifically, I noted that the constitution required voting members to "affirm their agreement with and adherence to the Organization's purpose, objectives, and statement of faith as outlined in Articles II and X. All voting members shall subscribe without reservation to Article X as our understanding of the Scriptures…". I advised that "recognized student clubs may not restrict membership or voting privileges based on a student's religious beliefs or require adherence to a statement of faith as a condition of participation." Rather, "any student who pays the Student Activity Fee must be eligible for membership and participation in

club governance." I offered to assist Mr. Seachrist in bringing the constitution into compliance with the Club Handbook and nondiscrimination policy. Ex. G, pp. 3-4.

27. I received no further correspondence from Mr. Seachrist or anyone else acting on behalf of CBF after my June 22, 2026 email.

**SUNY Broome's Consistent Application of the Open Access and Non-Discrimination Policies**

28. I have been the Director of Student Activities at SUNY Broome since January 2022 and have been responsible for the review of student club constitutions (original applications and annual re-applications) since that time. No new student club has been recognized by SUNY Broome that has restricted membership or executive leadership qualifications based on any protected discriminatory characteristic (i.e., religion, gender, race, etc.) in my time at SUNY Broome.

29. SUNY Broome does not have an exemption policy or procedure through which student organizations are permitted to avoid the Open Access policy or Non-Discrimination policy by limiting their membership or executive leadership based on religious views, race, sex or any other protected characteristics.

30. SUNY Broome has recognized student clubs whose missions center around religion or other protected characteristics. For example, the Brothers and Sisters in Christ ("BASIC") are a recognized student organization that describes itself as a "non-denominational Christian group that's all about building friendships, growing in faith, and creating a community together." https://sunybroome.campuslabs.com/engage/organization/basic. The constitution of BASIC describes the mission as being "to provide a Christian fellowship for a diverse group of students and help students develop a living, growing, relationship with Christ through Biblical teaching on salvation through Christ's death and resurrection, the Baptism of the Holy Spirit,

prayer and worship; building a bridge to local churches; and providing a nurturing, fellowship where students can exercise their faith and practice leadership skills." A copy of this constitution is attached as **Exhibit I**. This constitution states that "[m]embership shall be open to all currently registered students at SUNY Broome," and provides for the election of several officers, including a Worship Director. There is no restriction on who may be elected for any of the officer positions, other than that they be Active Members (members who attend 60 percent of meetings) and be in good academic standing.

31. SUNY Broome's Muslim Student Association (M.S.A.) has a stated purpose of fostering "a communal environment for Muslim students at SUNY Broome and for them to be able to connect with each other" and "to encourage Muslims and Non-Muslims with the fundamental understanding of humanity, equality, and service to others." A copy of M.S.A's constitution is attached as **Exhibit J**. As with BASIC, M.S.A. membership is open to all enrolled students, and any member is eligible to be elected to the officer positions on the Executive Board.

32. In addition, student organizations such as ElevateHer and Love You Like a Sister, both of which are focused on supporting groups based on gender or sexual orientation, are recognized student organizations that permit any student to join and do not restrict elected leadership positions to individuals of a particular characteristic (i.e., gender or sexual orientation).

33. CBF can receive recognition as a student organization and can state that its mission or purpose is religion-based; it cannot, however, restrict those eligible for voting membership or leadership/officer positions to persons who adhere to particular religious beliefs without violating SUNY Broome's Open Access policy or Non-Discrimination Policy. Students

that join the club are, of course, free to elect any student they feel is most appropriate to lead their organization or fulfill their organization's purpose (provided that student meets the enrollment and minimum GPA requirements set forth in the Club Handbook for student leaders).

34. I have reviewed the declaration of David Mayner, which I understand was submitted in support of CBF's motion for a preliminary injunction. To the best of my knowledge, and based on a review of SUNY Broome records, Mr. Mayner is not employed by SUNY Broome and has no stated association with SUNY Broome in any official capacity. I have never encountered Mr. Mayner in connection with my role as Director of Student Activities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: September 28, 2026

Nicholas M. Kocieniewski